IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-40788-TLS |
| ) | |
| EDM CORPORATION, ) | CH. 7 |
| ) | |
| Debtor. ) | |
| HASTINGS STATE BANK, ) | ADV. NO. A08-04040-TLS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| EDM CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

      This matter is before the Court on Defendant Huntington National Bank's Motion for Partial Summary Judgment (Fil. #37), a Resistance filed by Plaintiff Hastings State Bank (Fil. #69), and a Resistance by Defendant Scott Street Enterprises (Fil. #74). Matthew Rusch appeared on behalf of Huntington National Bank ("Huntington"), Richard P. Garden, Jr., appeared on behalf of Hastings State Bank ("Hastings"), and J.P. Sam King appeared on behalf of Scott Street Enterprises ("Scott Street"). The motion was taken under advisement as submitted without oral arguments. This Memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(K).

      There are two issues presented in this case. The first is whether the financing statement filed by Hastings identifying its debtor as "EDM Corporation d/b/a EDM Equipment" is seriously misleading under the Nebraska Uniform Commercial Code, rendering its security interest unperfected. The second issue is whether the landlord's lien asserted by Scott Street takes priority over the secured interest asserted by Hastings and/or Huntington. As discussed herein, I find that the financing statement of Hastings is seriously misleading and ineffective to perfect its security interest in the collateral. I further find that the security interest of Huntington in the collateral is a purchase-money security interest and that it takes priority over the landlord's lien of Scott Street.

*Background*

      Hastings filed this adversary proceeding to determine the validity, extent, and priority of the respective lien interests of the parties in certain assets of EDM Corporation ("EDM"). Although there are other issues involved in this adversary proceeding, the motion for summary judgment presently in front of the Court was filed by Huntington and pertains only to the validity, extent, and priority of the respective lien interests claimed by Hastings, Huntington, and Scott Street in and to a particular item of personal property known as a Horton Demo 533-3 Ambulance, VIN #1FDXE45P37DB01058 ("Collateral").

The underlying facts are not in dispute:

1.      At all times relevant to this motion, EDM was involved in the business of leasing, selling, and otherwise furnishing emergency vehicles, including the Collateral.

2.      At various times, Hastings made loans to EDM. Hastings holds a security interest in all of EDM's property, including its inventory. In order to perfect its security interest, Hastings filed a financing statement on June 10, 2003, which identified the debtor as "EDM CORPORATION D/B/A EDM EQUIPMENT." Hastings timely filed a continuation statement.

3.      On or about November 21, 2007, Huntington and EDM entered into a loan and security agreement and promissory note in the amount of $250,000.00, establishing a revolving credit arrangement. To perfect its security interest, Huntington filed a Uniform Commercial Code financing statement with the Nebraska Secretary of State on December 13, 2007. Its financing statement identified the debtor as "EDM Corporation." That financing statement included a broad description of EDM's assets, including accounts, inventory, equipment, and fixtures.

4.      On December 13, 2007, Huntington made an advance on its line of credit loan directly to the manufacturer of the Collateral to pay for EDM's purchase of the Collateral. The Collateral was delivered to EDM in Lincoln, Nebraska, on December 17, 2007.

5.      Prior to making its December 13, 2007, advance, Huntington searched the records of the Nebraska Secretary of State, UCC Division, and found that no record existed of any financing statement filed related to the debtor EDM Corporation by any party other than TierOne Bank. TierOne and Huntington entered into an intercreditor agreement whereby TierOne agreed to subordinate any interest that it may have in and to the Collateral to the interest of Huntington. The UCC-1 financing statement filed by Hastings on June 10, 2003 (and subsequently continued) was not revealed using the Nebraska Secretary of State UCC Division search engine.

6.      At some point after its acquisition, the Collateral was moved to EDM's rental property in Des Moines, Iowa. EDM leased that property from Scott Street. Scott Street claims a landlord's lien in the Collateral pursuant to Iowa Code Chapter 570.

7.      The name of the debtor, as it appears on the public record of the Nebraska Secretary of State's office, is "EDM Corporation." It was incorporated on October 21, 1991. The records of the Nebraska Secretary of State's office from 1980 to date do not contain any records of the application for or approval of the registration of the trade name "EDM Equipment" by EDM or any other party.

8.      Hastings, Huntington, and Scott Street are the only parties claiming a security interest in the Collateral.

9.      Hastings, Huntington, and Scott Street entered into a stipulation approved by this Court in EDM's underlying bankruptcy case under the terms of which Huntington was granted relief from the automatic bankruptcy stay to sell the Collateral and deposit the net proceeds with an escrow agent, with liens attaching to the net proceeds in the same priority as the parties had in the Collateral.

*Discussion*

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868 (8th Cir. 2005); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 371 F.3d 397, 401 (8th Cir. 2004).

1.   *Is the Financing Statement Filed by Hastings Seriously Misleading Under the UCC?*

The applicable statutory scheme was described by the United States District Court for the District of Nebraska as follows:

> Nebraska has adopted Revised Article 9 of the UCC, which provides that "a financing statement is sufficient only if it: (1) provides the name of the debtor." Neb. Rev. Stat. U.C.C. § 9-502(a)(1) (1999). The revision of Article 9 was meant to facilitate "a system of notice filing" under which security interest documents need not be filed, but rather only a single document notifying parties in interest that a creditor may have an interest in certain property owned by the debtor. Official Uniform Commercial Code Comment [hereinafter "UCC Cmt."] 2. Because notice of a secured interest in property is accomplished by searching the debtor's name, "[t]he requirement that a financing statement provide the debtor's name is particularly important." *Id.* The revised U.C.C. § 9-503, is meant to "clarify when a debtor's name is correct and when an incorrect name is insufficient." See Neb. Rev. Stat. § 9-101, UCC Cmt. 4.h. If a financing statement "fails sufficiently to provide the name of the debtor," it is deemed to be "seriously misleading" under the UCC. Neb. Rev. Stat. U.C.C. § 9-506(b); § 9-503, UCC Cmt 2. The revised § 9-506 deems a financing statement seriously misleading if the debtor's name does not comply with § 9-503(a), unless a search under the debtor's correct name, using the filing office's "standard search logic," would reveal the financing statement. *In re Irwin*, 2003 WL 21513158, *8-11 (Bankr. D. Kan. 2003).

*Genoa Nat'l Bank v. Southwest Implement, Inc. (In re Borden)*, 2007 WL 2407032, at *2 (D. Neb. Aug. 20, 2007).

Huntington's position is straightforward. That is, it conducted a search using the Nebraska Secretary of State UCC Division's standard search engine and that search did not reveal the financing statement filed by Hastings. Therefore, according to Huntington, the Hastings' financing statement is ineffective and Huntington was not required to give Hastings notice of its purchase-money security interest in the Collateral as inventory pursuant to § 9-324(b).

The argument by Hastings is that its filing <u>does</u> include the official name of the debtor "EDM Corporation" even though it happens to include additional information "d/b/a EDM Equipment."

Hastings points out that Official Comment 2 to U.C.C. § 9-503 contemplates inclusion of trade names, stating:

> Together with subsections (b) and (c), subsection (a) reflects the view prevailing under former Article 9 that the actual individual or organizational name of the debtor on a financing statement is both necessary and sufficient, whether or not the financing statement provides trade or other names of the debtor . . . .

The reliance by Hastings on the Official Comment is not persuasive. There is no evidence that "EDM Equipment" is a registered trade or other name of EDM Corporation. In fact, the evidence is to the contrary – the Nebraska Secretary of State has no record of such a name. It is clear that EDM Equipment is not part of the true legal name of the debtor. Hastings also argues that the addition of "dba EDM Equipment" to the debtor's legal name is harmless since the actual legal name does appear. That argument implies that the financing statement should be deemed effective as long as words constituting the legal name of the debtor appear and regardless of what additional words are tacked onto the end. Certainly, that cannot be the rule.

Further, and most important, it is undisputed that a search for EDM's legal name "EDM Corporation" using the Nebraska Secretary of State's standard search engine does not reveal the Hastings financing statement. In this jurisdiction, the United States District Court for the District of Nebraska has deemed a financing statement seriously misleading unless a search using the UCC Division's standard search logic would reveal the financing statement. *Borden*, 2007 WL 2407032. *See also Genoa Nat'l Bank v. Southwest Implement, Inc. (In re Borden)*, 353 B.R. 886, 888-89 (Bankr. D. Neb. 2006) (stating "[t]he test of whether an error in a debtor's name on a financing statement is a fatal defect is whether a search of the filing office's records under the debtor's correct name, using the filing office's standard search logic, would disclose the financing statement. This differs from the earlier test of whether a reasonably diligent searcher would be able to locate the financing statement."). *See also In re Jim Ross Tires, Inc.* 379 B.R. 670, 679 (Bankr. S.D. Tex. 2007) (where, under virtually identical facts, the bankruptcy court determined that the inclusion of a "dba" name following the corporate debtor's legal name is seriously misleading and insufficient to perfect a security interest in the collateral).

Therefore, based on the foregoing, the financing statement filed by Hastings was insufficient to perfect its security interest in the Collateral. That said, I feel it is important to note the difficulty of this decision. Hastings acted in a manner that many would consider to be prudent – it included on its financing statement the debtor's true legal name as well as another name by which the debtor was apparently known. Hastings tried to cover all its bases. Frankly, it is hard to understand why the Secretary of State search engine fails to find that financing statement. Of course, Huntington also acted prudently by performing a search prior to making its advance which provided the funds to purchase the Collateral. So, the end result is appropriate, notwithstanding its difficulty.

*2.     Priority of the Scott Street Landlord's Lien.*

Scott Street owns certain real property located at 500 East Scott Street, Des Moines, Iowa ("Rental Property"). On or about April 1, 2005, Scott Street and EDM entered into a lease agreement under the terms of which Scott Street leased the Rental Property to EDM for a lease term expiring on July 30, 2010. Commencing in January 2008, EDM defaulted on its obligation to pay rent to Scott Street. The

Case 08-04040-TLS    Doc 93    Filed 02/10/09    Entered 02/10/09 15:20:53    Desc Main
                                Document       Page 5 of 6

Collateral that is the subject of this motion was moved onto the Rental Property in mid-March 2008. Scott Street secured the premises and has asserted a lien on the Collateral. Scott Street has filed a proof of claim for an amount in excess of $198,000.00 and asserts a landlord's lien under Iowa law.

As an initial matter, Scott Street has raised certain evidentiary objections. Scott Street objects to the allegations in paragraphs 4 and 6 of the Affidavit of Laurie A. Bakke (Fil. #40) which state that the loan and security agreement entered into between Huntington and EDM were "for purposes of establishing a revolving credit arrangement." That objection is overruled as the loan documents clearly speak for themselves. Scott Street also objected to Ms. Bakke's allegations in paragraph 6 of her affidavit which state that the manufacturer of the Collateral required the Collateral to be paid in full prior to EDM taking possession. That objection is sustained on the grounds of hearsay. Finally, Scott Street objects to the allegations in paragraph 3 of Ms. Bakke's supplemental Affidavit (Fil. #82) on the basis of hearsay and insufficient foundation. The evidentiary objection by Scott Street is overruled.

Iowa Code Chapter 570 provides for a landlord's lien. Section 570.1 of the Iowa Code provides, in part, as follows: "A landlord shall have a lien for the rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant which has been used or kept thereon during the term and which is not exempt from execution." Further, Iowa Code § 554.9109(4)(a) is Iowa's version of § 9-109 of the Uniform Commercial Code, and it provides that it does not apply to "a landlord's lien, other than an agricultural lien." Neb. Rev. Stat. § 9-109(d) contains the same provision.

The Iowa Supreme Court has held that since the Uniform Commercial Code does not apply to the landlord's lien, a court must resort to common law to resolve priority conflicts on collateral which is subject to a landlord's lien. *Perkins v. Farmers Trust & Sav. Bank*, 421 N.W.2d 533, 535 (Iowa 1988). The Iowa Supreme Court has also determined that a purchase-money lien on personal property takes priority over a landlord's lien because the landlord's lien attached only to the property right of the tenant and the tenant held the property subject to the purchase-money lien. *Miller v. Swartzlender & Holman*, 182 N.W. 651 (Iowa 1921); *Barrett v. Martzahn*, 173 N.W. 72, 72-73 (Iowa 1919).

Huntington asserts that its lien is a purchase-money security interest which takes priority over Scott Street's landlord's lien. Based upon its briefs, Scott Street does not appear to be disputing that a purchase-money security interest would take priority. However, Scott Street disputes whether Huntington has a purchase-money security interest in the Collateral.

Neb. Rev. Stat. UCC § 9-103(a)(2) provides the applicable definition of "purchase-money obligation," which is "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." According to the loan and security agreement attached to the Affidavit of Laurie A. Bakke (Fil. #40), Huntington agreed to allow EDM to borrow up to $250,000.00 under certain conditions, including specific advance requests. On that same date as the loan and security agreement, EDM requested a specific advance of $115,584.00 to enable EDM to purchase the Collateral. On December 13, 2007, Huntington funded the advance directly to Horton, the manufacturer of the Collateral. Following that funding, the Collateral was delivered to EDM in Lincoln, Nebraska. Thus, despite the line of credit for up to $250,000.00, the only "obligation of an obligor" actually incurred was the $115,584.00 obligation incurred by EDM to finance its purchase of the Collateral, plus interest thereon. This obligation was incurred as the purchase price of the Collateral and was the value given to enable EDM to acquire rights

in the Collateral. Clearly, the transaction falls squarely within the definition of a purchase-money security interest.

Scott Street argues that the "obligation" was "incurred" when the loan and security agreement were executed and Huntington agreed to loan up to $250,000.00. Scott Street is mistaken. Merely entering into the loan and security agreement did not impose any obligation on EDM until such time as EDM requested and obtained an advance of funds. The documentation addressed how EDM could obtain the advance of funds and how it would pay back the advance. Obtaining the advance triggered EDM's "obligation" to make payments to Huntington.

Scott Street's reply brief adds the further argument by which Scott Street seems to suggest that Huntington was required to note its security interest on the certificate of title or maintain the manufacturer's certificate of origin at all relevant times in order to perfect its security interest. *See Kelly v. Gothenburg State Bank & Trust Co. (In re Zysset)*, 2008 WL 4283131 (Bankr. D. Neb. Sept. 11, 2008). However, Scott Street's argument is again misplaced. Scott Street fails to recognize that the obligation to note a lien on a certificate of title to a motor vehicle is inapplicable when the vehicle is "inventory." Neb. Rev. Stat. § 60-164. Vehicles as inventory are subject to the provisions of Article 9 of the Nebraska Uniform Commercial Code. According to EDM's schedules filed in the underlying bankruptcy case, Case No. BK08-40788-TLS, the Collateral was held as part of the inventory of EDM. Thus, security interests in it are governed by Article 9, not by a certificate of title statute. As discussed above, the advance by Huntington created a classic purchase-money security interest under the Uniform Commercial Code. As such, its purchase-money security interest takes priority over any landlord's lien claimed by Scott Street.

Separate order to be entered.

DATED: February 10, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
   *Matthew Rusch
   Richard P. Garden, Jr.
   J.P. Sam King
   Thomas D. Stalnaker
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.